Case 16-4027, Planned Parenthood of Grtr OH et al v. Lance Himes. Argument not to exceed 20 minutes per side. Mr. Carney, you may proceed for the appellant. May it please the Court. I'm Stephen Carney for Ohio. I'd like to reserve five minutes for rebuttal and also five minutes for the United States. Your Honors, three points show why Ohio is well within our constitutional authority when we seek to express our preference for childbirth over abortion by funding certain health programs only through providers who do not also perform abortions. First, the unconstitutional conditions doctrine does not apply because Planned Parenthood has no constitutional right to perform abortions. Second, the undue burden test is not violated here because they admit they will continue as before and so women's rights will not be affected at all. And finally and most important, the Court should not create a new hybrid conditional burden test where we somehow speculate what the effect on women might be if they accepted the condition and if they changed their behavior. And that third point is most important here because if you just apply straightforward either of the first two doctrines, they lose if you apply the doctrine in its own silo. It's only by mixing and matching elements of both that they come up with a new test which ends up ironically easier to attack a state law when it's doubly indirect, when it's only about funding and only upon a third party than it would be to actually do a direct regulation on the abortion right. And so it's important to step back and look at what the unconstitutional condition doctrine is. It's not an independent claim. You don't raise count one, First Amendment, count two, unconstitutional condition. The condition doctrine is a manner or method of attacking whatever, whether it's a First Amendment right like Broderick or Finley or a Fifth Amendment claim like Kuntz or whether it's the abortion right in Harris or Rust. In every one of those, the rights holder says, you are pressuring me to give up my right. So it's a method of showing what your underlying right is. And the relationship between the conditions doctrine and whatever the actual underlying substantive right is has two aspects to it, the direct indirect and the what test do we use. The direct indirect relationship is this, and it's not a two-way street. Rumsfeld tells us that if you have the right as the state to directly regulate, well, then the state automatically wins. Because, of course, if the state can regulate directly, then it could do the lesser step of making something a condition. However, that street doesn't run the other way. If the state cannot do something directly, well, then it's a calling balls and strikes. It's not the case that just because we can't do it directly, we can't do it indirectly, because that's what all those cases like Broderick and Findley and Kuntz are all about, when the state can still act despite the fact that we couldn't do it directly. And so the test to use, the two things about it are that, one, it is always context specific. There's a specific way you look at First Amendment. There's the nexus test that Kuntz uses in the Fifth Amendment. There's a specific neutrality angle with establishment and free exercise interplay in Locke v. Davey. It's always context specific. But the one thing we do know is that the conditions tests are always lesser than the direct regulation test. So whatever the test is to be able to regulate something, whether speech, property rights, what have you, once the state is using its power to regulate with conditions, it's a less exacting test. Or at most, it comes close to, but it never exceeds what the direct regulation test would be. And that's the problem with their approach. Because if you just look at any of the cases that are involved in unconstitutional conditions, they start with what the right is. And here there is no right to perform abortions. We know that because Casey tells us directly that the right is entirely derivative of the woman's right. That's why even when you have a direct relationship, I mean direct regulation upon a provider, we don't just ever stop there. Even when a provider is completely shut down, we ask the next question of, well, does that flow through to an undue burden upon women? So for example, if you look at Hellerstedt and compare this court's decision in Women's Med Professional versus Baird. In Baird, this court looked at a case where regulation might close down a day in clinic. And what the court said is not, oh, the state automatically loses because you're shutting down a right to perform. The court said, how will that play out for women's rights? And what the court did is it said, well, a day in Cincinnati is less than an hour, so that's not an undue burden. So the state wins. Conversely, when a different regulation in Texas was going to close down all of these clinics throughout west Texas, the court did the same sort of analysis that this court had done in Baird, except it said, wow, going over three hours, 200 miles from rural west Texas to get to Dallas or Houston, that is an undue burden. But they did the undue burden test. And here's the interesting thing. If you take their test, where somebody claiming, oh, it's a condition on my right, so therefore I win right away, I don't have to show the undue burden, that would mean if you took the case of Baird or even Casey itself, the state would end up losing cases that were now winning as direct regulation. If Pennsylvania decided instead of requiring informed consent and a waiting period, we're going to give out grants to all the doctors in the state, however we're going to add a condition to get your grant for more medical education or so, you have to agree to always give a waiting period and informed consent if you're performing an abortion. Under their test, they would win and the state would lose. Because it's a funding condition, we then therefore don't have to show undue burden. So Casey would come out the other way. When the state steps back and has a lesser effect, we would end up losing. That's not right. It's also the same thing in Baird. If it didn't matter about what the effect on women would be, they would have won that case. Any case that you just phrase a condition, they say they don't have to make a showing. And that's simply wrong. The reason that you have to make a showing is because there is no right to perform abortions, and so they don't even get off the ground. There's not a single U.S. Supreme Court conditional or unconstitutional case where someone else other than the rights holder gets to say, oh, this is pressure on me to stop facilitating someone else's right. That's doubly indirect. It's funding rather than direct, and it's on another party. When you say that there is no right to provide an abortion, isn't the right of the woman to choose inherently tied up with some provider? It is in the procedural sense, but not the substantive sense. And we know that because Casey says so at page 882 and 884. It says that the provider's right is entirely derivative of the woman's. So, yes, that's why, for example, we don't challenge standing here. We never have. We don't today. Singleton lets you bring third-party standing, but the reason it's third-party standing, Your Honor, is because they don't have first-party rights at issue. So they can say, we step in the shoes of women and say, this will affect women's rights. So that's why they do get to challenge Casey. They do get to challenge in Hellerstedt. But in Hellerstedt, they didn't get to say, oh, this will close us down. That's over. Or Missouri Armstrong, this regulates providers. No, you look to, does it have an undue burden? And here we know there's no undue burden because they tell us so. They say there won't be an undue burden here because we're going to continue. So the ultimate question in all these cases is what right and whose right? And here, women's rights aren't affected. Women can still obtain abortions, same as before, with no effect. Women can still receive any of these services through the State of Ohio's other grantees. And there's no right to have both under the same roof or under the same label. And from their end... In your pleadings, it seems to me, don't you admit that there is going to be some burden on some classes of people based on socioeconomic status? I know that you go through and you talk about the services that are provided by the states and other categories, but even you acknowledge that perhaps for some, you know, poor people or some minority people, there might be somewhat of a burden on whether it's undue or not. I mean, that's the question, but you do acknowledge that. No, we don't, Your Honor. No, there's no burden at all for two reasons. First, if you look at the burden upon abortion, they say there's none at all. But if you look at the other... We're not talking about just the burden, because they talk about six different categories. Right. You know, all these screenings, and in one of those, you say, well, maybe there might be something, they may have to go further, they may have to do this, that, or the other, because there's some, there's a gap in services provided by Ohio and some of the ones that are provided by the two entities. But we dispute that both factually and it's legal import. Factually, what they alleged earlier, some gaps in coverage, we're setting up, ironing out, lining up everyone. But all the, there are people lined up in every county to still obtain services, and there is also no showing factually that there's any overlap between people who want to receive those services and people who want to obtain abortions. But also, the ultimate question about those other things is, as much as as a policy matter, we of course want to serve as many people we can in these discretionary programs, there's no constitutional right at issue with STD testing. There would have to be an effect upon a constitutional right. And of course, as long as the abortion right is not affected, and that's why, and there's also no coercion even on Planned Parenthood, because they say some of these programs they lost money on or there's just a couple percent of their budget, so there's nothing there. What would happen if you had a state, you know, after Maher, they says, you know, there's no constitutional right to subsidize? Theoretically, you have a state where without subsidization, there is no clinic, no one's providing services. Would that turn into an undue burden? So in that case, I see my time is up, if I may answer briefly. If there is a pass-through effect on women, well, two things. First, if it's a conditional on women, then they get to bring that directly. And second, then women could say, if there are no services available to us, then you have an undue burden analysis. And be an undue burden and potentially be able to force subsidization? I don't think subsidization, because Maher tells us, not subsidization of the abortion. Okay, but that's my question. How do those two doctrines interrelate? You have a situation where theoretically the state says no subsidies. Post that law, there are no clinics, there are no services being offered. Does that create an undue burden for the woman? Let me clarify, no subsidies on abortion or no subsidies on some other? It's just pure direct. But I'm just making the point. It's like how Hellerstedt interrelates with Maher. That's all I'm trying to figure out. So you have a Maher state, no subsidies. After that, and it's no direct subsidies. It's not indirect like this case. But there are no clinics offering anything. So now it starts to look like a Hellerstedt case. And I'm just asking you, who wins that case? Well, I think, Your Honor, the no subsidy part of it is still ruled by Maher. I don't think Hellerstedt changes that. I think in Hellerstedt you had an actual regulation of saying you must do admitting privileges, you must do this, and then you do an undue burden test. But I think whatever the answer is to that, it's certainly not implicated here because they lose in either silo. They lose in the Maher silo because we don't have a duty to fund. But they also lose in the undue burden because they admit there isn't one. Another way to look at it is if there were an abortion clinic on every corner in Ohio, like the Ninth Circuit mentioned in Texera, they would still win under their theory because as long as there's a funding impact on the third-party provider, they would somehow win that case without having to do any burden analysis on whether it affected a single woman. And that's not right. The test for conditions can't be stricter than it is for direct regulation. Mr. Carney, the hypothetical, which is not our case, isn't that the Hyde Amendment case? Isn't that Harris v. McRae? Well, it is as far as no subsidies for abortion. That's what the Supreme Court ruled is that Congress does not have to provide subsidies for abortion, and that's why they upheld the Hyde Amendment. Right. So that's directly on point as far as subsidies for abortion. I don't think that's changed. Doesn't that answer the question that Judge Sutton raised? I think it does. That's why I was asking whether there's some other type of subsidy, there's some kind of actual interference. In fact, I think under Hyde it doesn't make any difference, that Congress has an interest in supporting, they call it potential life, and that interest is recognized, and even if it results in no abortion clinics because there's no subsidies, that's allowed. That's the way I read the Harris v. McRae. Correct. There's no duty to subsidize and no duty to fund. Were there any conditions that could be placed on firearms dealers that would be unconstitutional as long as there was adequate access to firearms? Probably not, Your Honor, and that's Texera where they had a gun dealer situation and they even compared it to the abortion right, and the Ninth Circuit en banc said no. There is embedded in there a separate question in Texera of whether there's something unique about the history and text of the Second Amendment that there would be a seller's right, but the rule is this, as long as if you take the stipulation that there is no seller's right, then no, then obviously nothing you do to the seller does affect unless you have a carry-through effect upon the actual right holder, and here we do know that there is no seller or rights facilitator right because Casey tells us so, but if you had that same situation with guns, no, you can do things with gun sellers as long as it doesn't affect gun buyers because it's all about whose right is it anyway, and here we don't affect anyone's rights. They're the ones who don't have a right. The women who do have rights aren't affected. As long as you don't have one or the other, the state is able to do this to express our preference. You may have answered this question sort of tied I think to Judge Sutton's question, but as I understand it in the record, a lot of the clients of Planned Parenthood or lower income would have difficulty obtaining abortion-type services elsewhere. So let's say Planned Parenthood accepts the conditions and does not perform non-therapeutic abortions. Do we then ask the question as to whether there's an undue burden on women in that situation? Well, Your Honor, two questions to that. One, I don't think we need to, obviously here because they concede they're not going to do that, but I think the test for an indirect upon indirect here, it's unclear exactly what it is, but I think because all of the other tests in other contexts, and they're unique in every context, are less than the direct route, it should be something even more flexible. But at most if you apply the undue burden test, at most if you look at the undue burden test, you would say if Cincinnati and Columbus Planned Parenthood closed, what would happen? And if you follow what this Court said in Baird of driving from Dayton to Cincinnati versus Cincinnati to Dayton, I don't think we have an undue burden problem, but we don't even get to that layer because here they're stacking indirect upon indirect. So I don't think we apply it, but I think we would win it if we got there. But in any case, they can't demand a test where they have an easier go of it for indirect than they would do where they say they don't even have to make a showing. Again, under their test, if there were 10 clinics in Cincinnati and they only provided 2%, they would still win, and that can't be right. And that's why. Did you contest that below? Yes, we've never conceded that there would be an undue burden. But we've also relied on their concession that there won't be. So as long as they say that, there's no counterfactual to have to do here. Is there no, in your analysis, is there no need of any relationship between the condition imposed and the program to which it's attached? Not in a case like this, Your Honor, because they are not the rights holder. Because there is no substantive right even at issue here. And Rumsfeld tells us, unless you have a constitutional right, then a condition on that right doesn't matter. So we don't get there. So you could attach conditional subsidies to anything that had no relationship at all to what the subsidy was for, and then condition that? Well, if you condition, for example, if you add something bizarre where you say, we won't give funding for some non-constitutional right if you don't surrender some other non-constitutional right, as long as you have no constitutional right on either side, then odd conditions, at most, I think you would have at some point an equal protection challenge, because then you're categorizing someone perhaps with no rational basis at the outer limits. But that would only be provided there. Because, again, the unconstitutional condition doctrine is derivative, and the question is derivative of what? Derivative of First Amendment, Fifth Amendment? Here, you'd have to say derivative of the abortion right. And because there's no abortion performance right, we stop right there, we don't do connection or not, because there just is no performance right, and that's Rumsfeld. And on the other hand... If, in this case, they had said, we're going to give the abortion clinics up, and we're going to take the six program subsidies, then there might have been a problem. Well, I would say two things. One, the highest test you would do would be the undue burden test, and we meet that here. But second, even if you do import, sort of by analogy, to these other contexts where there's a nexus test in the Fifth Amendment area under Kuntz and the property cases, what you would do is, if we did have to show a nexus, is I think we meet that here. Because we don't want our message of pro-childbirth to be diluted by having basically the State of Ohio seal of approval that someone's wearing a Planned Parenthood T-shirt with the State of Ohio button on it, and that undercuts our message of what public health is all about. And we want public health to be childbirth-focused. For example, one of the programs here is an infant mortality program, where we try to teach women from day one of, take care of your baby, don't smoke, don't... I understand the garbled message analysis. I'm just struggling with the ability to implement regulations or laws that have no connection to the programs that you're providing. And your answer to me is that those conditions or those subsidies can be tucked into any other law. Well, I'd say there are other doctrines that limit it at the outer reaches, but there's no conditions doctrine to apply. But I'd also say in terms of meeting it, you know, Armour versus the city of Indianapolis said administrative ease is a legitimate state interest. And here, they did talk about how, you know, they had STD testing in the same building where surgery was, surgical abortions, and so they changed that right after this law. Because it takes a lot of administrative work to say, does some of the overhead of that building and keeping the lights on go to both, so our STD reimbursements... Is it a cumulative issue if a condition on a subsidy is attached to farm programs and then is attached to health programs, each impacting the availability of services to women? Is the test then only on the case that's presented before you, or does the test become a look at the cumulative effect of those various attachment of subsidy conditions? Well, it depends, Your Honor, on which part, again, because the doctrine is merely a pathway towards some substantive right. For example, if you mentioned, you know, farm subsidies, because there's no constitutional right implicated by farm subsidies, it doesn't matter what the cumulative are. You and I can think of examples easily in which it would fit. You have a farm co-op. They sell pond treatment, they sell hay, they sell implementation, they sell guns. And you say to the farm co-op, we will not give you the hay subsidy, the barn subsidy, the pond clearance subsidy, as long as you're selling guns. I think we can, as long as there's no carry-through effect, ultimately to the rights holders. So ultimately it's a cumulative issue? Ultimately, well, it's cumulative in the one sense, but as long as there's no right to sell guns, which I'll stipulate for now, and we know there's no right on the performance side here from Casey, if there's no right implicated on column A, you can stack as many cumulative effects in column B on the condition side, and it doesn't matter because there's no right to protect. Now then secondarily, until it impacts a defined constitutional right, and here because there's no right to perform, it doesn't matter. Because again, another way of looking at it... Or until it implicates where there is a constitutional right. Correct. Either a woman's right or a Second Amendment right to bear arms. Correct. You have to find, yes, that there actually is a constitutional right, and with no right to perform, and that's why the district court openly said there was a right to provide, and why the panel opinion talked, unfortunately, mistakenly about a right to provide, is because that's the only way to get there is to import a right that doesn't exist. But once you accept Casey's teaching, it's over for that column, so you then go to the undue burden column. And if you can't win in column A and B, you can't mix and match. And what about the First Amendment right? Planned Parenthood's own First Amendment rights? So that question, Your Honor, we acknowledge they do have their own right that doesn't route through women, that is a first-party right. Here, the strongest answer to that is that the court should avoid that question because First Amendment issues are complicated and there's no reason to reach it because Ohio has an independent provision in C-1 that says if you provide abortions, that alone, if we win that, as we should, takes it out so the court doesn't need to reach. But that would preserve, at best, the conduct. I mean, don't they still have a right to associate and advocate? Yes, Your Honor, but because the way the program works is once we apply our provider rule to them, and if the court rules on that as it should, they are now ineligible. So the fact that there's some other provision out there that would make them eligible, another way to think about it is, if they only challenged the one and then another provider the next week wanted to just raise a brand-new speech claim, is with the providing claim already resolved against them, they wouldn't even have any standing to bring a promotion claim because their First Amendment rights are not affected because there's already another independent clause of the law and independent provision that takes them out. That's why they raise in a footnote the severability notion of saying the law has to stick together, but that can't be so because Ohio has an express statute that says we presume severability and Ohio law also has a law that says are they capable, not just legislative intent, but is it capable to implement one law without the other. And it certainly is capable. It again depends upon the fact that they have stated that they're going to continue to pursue the conduct. Correct, as to the conduct claim. And that's why we don't reach the speech claim. We think following the Fifth Circuit in Suez that we would win that, but we think you don't need to reach it and because the severability is so straightforward. Thank you.  May it please the Court. Judge Sutton, the reason Ohio does not need to subsidize abortion, even if there would be no abortion clinics in the state, is because the right that Casey recognized is not a right to an abortion, but the right to have the state not unduly burden the ability to obtain an abortion. And if the state doesn't do anything other than merely not subsidize, the state is not unduly burdening the right to obtain an abortion. And that principle is the critical principle for why Ohio's law here is permissible, because Ohio's law here, likewise, does not unduly burden the ability to obtain an abortion, because as Planned Parenthood has conceded, they will continue to provide abortions despite the law. Therefore... ...consistent with the whole philosophy behind the unconstitutional conditions. So you can just pile on unconstitutional conditions until the provider says uncle. Well, no, Your Honor, because again, the unconstitutional conditions doctrine is a limit on the ability of the government to do indirectly what they cannot do directly. But if the government can regulate directly, then you never get to the second step of the unconstitutional conditions. But the government can't say, can't completely outlaw the performance of abortions or advocating or providing information. That's true, Your Honor, but what the government can do is the government can impose the very law that is imposed here because it does not place an undue burden on the ability of women to obtain an abortion. And the easiest way to think about this, Your Honor, as we pointed out in our brief, is if this wasn't a funding condition, if it was just a tax, if the state of Ohio just imposed a tax on Planned Parenthood, that would not be analyzed as an unconstitutional condition because it's not a condition. It would be analyzed as a direct regulation. And as a direct regulation, it would be plainly valid because it would not impose any burden on the right of a woman to obtain an abortion because of their concession that they will continue to provide abortions. So does it entirely hinge on the concession? Our submission, our brief hinges on that concession. Absent that concession, it would be a different and harder case. The court would have to consider the effect of their choice to stop providing abortions and how that should be analyzed under the undue burden test. But because they have conceded it in the district court and have never walked away from that concession in any brief in this court, I think this case is easily resolved on the principle... Is there a case that you rely on to say that a concession that they will continue to provide services is this fatal flaw? I think the case that's the most relevant to this is the Maserat case, the Supreme Court's case, where the court said that there was no undue burden because the women... In that case, Montana passed a law that said that abortions had to be provided by physicians, not non-physician assistants. And that would basically have put a non-physician assistant in Montana out of business. And the court summarily reversed the Ninth Circuit saying it might put that non-physician assistant out of business, but it's not going to have any effect on the underlying women's ability to obtain an abortion. So to here, there is no effect on the women's underlying ability to obtain an abortion, and that should be dispositive. The whole point of the unconstitutional conditions doctrine, it typically comes up because the government asserts the funding condition as a defense. They essentially say if you take, for example, a typical First Amendment case like AID, the government obviously couldn't have forced the speaker there to adopt the policy of opposing prostitution. If it was a direct restriction, it would be subject to strict scrutiny as compelled speech and would be invalid. The government comes in and tries to defend by saying, look, it's not a direct restriction. It's a funding condition. They could have said no. And that's when the entire analysis goes down to the unconstitutional conditions doctrine. But here, at the very first step, the critical point is that there's not strict scrutiny under Casey anytime you have a law that regulates abortion. The whole point of Casey, this was the most contested part of the decision, was to not adopt strict scrutiny. It was to adopt the undue burden test. And the critical point about the undue burden test is that there has to be a substantial obstacle placed in the ability of the woman to obtain an abortion. And by definition in this case, there is no obstacle placed in the ability for a woman to obtain an abortion. Is the undue burden test factually based? Is it a factual determination? Yes, Your Honor. It's part fact, part law. But if you look at cases like Whole Woman's Health and Casey, it looks at the actual effect of the law. That is different than other, if we look at the First Amendment context or other fundamental rights, they don't have this undue burden. I think that's exactly right. This is unique. So if we look at the fundamental rights decisions in other contexts, which is exactly what the other side wants us to do, they're really not applicable, are they? Because they don't have the fact-based test that we have here for abortion. It's different in two critical ways, Your Honor. The first is, as you say, this test is an undue burden. There has to be a substantial obstacle. What that means by definition is that there can be an obstacle that is not substantial that doesn't violate the right. That is not how, for example, the First Amendment works. You cannot impose an insubstantial obstacle on speech if you're targeting speech in a content and viewpoint discriminatory way. The other critical way in which the abortion right is different from other rights is that, as Casey recognizes, the state is allowed to openly and validly have a policy of supporting childbirth over abortion. So it is permissible for the state to say, we are imposing certain regulations to further our interest of supporting life and opposing abortion. Again, you cannot have a state that says, we are taxing speakers because we don't like speech. And that, I think, is the critical part here. Because of the nature of the Casey right, that it is a right limited to undue burdens on abortion, a law that does not impose an undue burden cannot, therefore, violate the unconstitutional conditions doctrine. Could Ohio prohibit Planned Parenthood from performing these other services? I'm sorry, from performing the abortions or the other services? No, the other services. Could they say, Planned Parenthood, you cannot give STD testing, you can't do the pregnancy support, you can't do any of these things. We don't permit anyone who is affiliated with abortion or abortion providers to perform these other services. So, since none of those other services are themselves constitutionally protected, the question would be whether imposing a regulation like that imposes an undue burden somehow on the ability of women to obtain an abortion. And as counsel pointed out earlier, there are at least three factual reasons why that's not established here. First, we don't know if the women who seek the abortions are the same women who seek the services. Second, we don't know if the women who seek the services from Planned Parenthood wouldn't be able to seek the services from another provider. Third, we don't know that even if there was a woman who wanted abortions and also wanted the services and couldn't get the services anywhere else, we don't know whether the inability to get that service rise to the level of a substantial obstacle to getting the abortion. But even if you overlook the fact that none of those three factual premises are established here. So you're saying that, yes, they could do that, they could stop abortion providers from doing anything on that basis as long as they are going to continue performing the abortions. As long as there's not an undue burden on the ability of a woman to obtain an abortion. And to take a simple example, Your Honor, just hypothesize that the set of women in the state of Ohio who obtain abortions is wholly distinct from the set of women in Ohio who obtain these other services. In that situation, on your hypothetical, it can't possibly be unconstitutional to impose that restriction on Planned Parenthood because there will, by definition, be no effect whatsoever on the women who are seeking abortions. They can still get their abortions, and the other women who are deprived of these other services have no constitutional rights to them. The fundamental problem here is that you have to focus on the rights of the women who have the right to obtain an abortion. But that's a law that said any doctor who performs abortions may not perform any other procedure? Your Honor, I think the analysis, again, has to focus on whether there's an undue burden on the ability... So you're saying, yes, they can. As long as that doctor continues to perform abortions, the state of Ohio can say you can't do anything else. Well, as I said, Your Honor, I think there are at least several factual questions you would have to answer as to whether... It also would be subject to rational basis. And it would also have to be subject to rational basis at the outer bound before you even... You first have to determine whether there's some reason why that would burden women's ability to obtain abortions. Okay, so you're saying the only parameter is if there's an actual burden. That's right, because... You can impose basically anything that you can make any rational argument for. Any hypothetical rational argument is okay as long as the person the condition is placed on continues to stand up and perform the abortion. And again, critically, Your Honor, and that the person the condition is placed on does not themselves have a constitutional right. Assuming that hypo, the doctor... Assuming that there's an Ohio state law that doctors who perform abortions cannot perform any other medical services. We know there are lots and lots of doctors in Ohio. So any woman trying to get an abortion would be able to get an abortion from this doctor but would be able to get her health care elsewhere. And you are... I don't know that any of your other three suggestions about we need to know the facts would apply here. So you would be upholding that statute. I think that's right. You're subject to the rational basis caveat. It's rational because of the policy of Ohio to favor childbirth. But I do think that's right, Your Honor, that if it's the case that every single woman in the state of Ohio is still able to obtain an abortion and also on your hypothesis able to obtain medical services from someone else the only burden that can be identified in that circumstance is that they have to go to two people rather than arguably one. And that by itself surely doesn't violate Rust. That was the facts of Rust. What Rust did was say that you have to have a separation between your Title X program and your abortion programs. One more question. Would that be fine? I'm sorry. What do you make of the language in Rust and the other cases that say, look, this is talking about the program. It's not talking about the recipient and what the recipient is doing in unrelated activities. That's the second step of the analysis in Rust. If you look at Rust, Rust at the very front of its analysis starts from the premise that, of course, Congress could not have done this directly. Congress could not have told the Title X program participants that they cannot speak about abortion. The critical difference here is Ohio can speak about abortion and impose this condition directly. If you apply the undue burden test, it satisfies the undue burden test. Whereas the law in Rust would not have satisfied strict scrutiny. That's why. Thank you, Your Honor. I appreciate the time, Your Honor. May it please the Court, Alan Schoenfeld for the Planned Parenthood Affiliates. Judge Moore and Judge White, I want to start with the question the two of you were asking. Harris v. McCrae and Webster are entirely clear on this question. You may not penalize a party for exercising, in Harris v. McCrae, their right to obtain an abortion, and in Webster, the performance of abortion. You may not penalize that party outside the contours of the question at issue, which in those cases were state-funded and federally-funded family planning programs. Footnote 8 in Webster makes this clear with respect to doctors. It says, it would be an entirely different question entirely if the states sought to penalize doctors by excluding them from public facilities for performing abortions on their own time and dime. The same point is made in footnote 19 in Harris v. McCrae. That principle is entirely consistent with the unconstitutional conditions doctrine as it has been spelled out by the Supreme Court since Frost in 1926, as articulated recently in AOSI and Kuntz. You may not, while the government has substantial latitude to define the contours of a government program, including a family planning program, to exclude subsidized abortions, the government may not penalize an individual or an organization for performing abortions or engaging in abortion-related speech on their own time and dime. That is precisely what Ohio seeks to do here. These programs do not concern abortion. There were factual findings below. The constitutional right at issue here is a woman's right to be free from an undue burden in accessing an abortion. I'll tell you how I'm thinking about the case. To me it's a lot like Hellerstedt. I really think it is an undue burden case. Just as in Hellerstedt, you wouldn't have said in the abstract they've placed this licensing restriction which is probably going to limit the number of hospitals and clinics that provide abortion services and therefore strike it on that ground. That's a little bit like our case Baird. You'd say, okay, wait, we have to look on the ground and see what happens after the law is passed. Then after the law is passed, we decide whether it presents a substantial obstacle. Hellerstedt, yes it did. I'm struggling with why that isn't precisely the same approach that we have to take here. Otherwise you are leveraging the unconstitutional conditions doctrine into protecting things that aren't otherwise protected, and that seems odd. I agree with you entirely. I think that's exactly what the court does need to do here. Below, there was an undisputed factual showing that if Planned Parenthood accepted the condition here, there would be an undue burden on women in Ohio. There would be no abortion providers in Cincinnati, being at the largest metropolitan area in the United States. What do we do with the concession by your client that we're not shutting anything down? There is no unconstitutional conditions case that requires the recipient of the condition to submit to it in order to challenge it as unconstitutional. Branty v. Finkel explicitly says there was no need for the assistant public defenders in that case to show that they had been coerced into changing their political parties. This is precisely their point, because it was their constitutional right. Let me give you another example. Memorial Hospital v. Maricopa County, that was a case brought, an unconstitutional conditions case that Justice Alito discusses at length in Kuntz. In that case, the funding condition that was at issue in that case was that the state refused to subsidize medical care when the patient failed to comply with a durational residency requirement. So the constitutional right at issue in that case was the right to freedom of travel. Did those cases have a substantial burden test? Absolutely. There is no unfettered right to travel. It is equivalent to a substantial burden test. I think substantial burden was invented in the Casey. I think undue burden is the applicable standard for abortion cases. Because of that, it is unique. If you look at these other cases, they don't have the undue burden standard that we have in abortion. So I don't think you can compare them. The unconstitutional conditions doctrine applies in a bespoke way to individual constitutional rights. I agree that you need to conform it to the underlying right, but the fact that the undue burden analysis applies in abortion cases... Only abortion cases. Certainly, but you could say the same thing about the takings test. That is a nexus and rough proportionality test. The Supreme Court in Kuntz confirms that the unconstitutional conditions test applies there, notwithstanding the fact that the underlying substantive test is slightly different. Because we have the undue burden test here, which is unique, do you agree with me that it is a factually based determination? I do. We have to look at the facts. The facts here, you have conceded. You have made a judicial admission that you are going to continue doing the abortions. So you have in effect conceded that there will not be an undue burden for women to get abortions. Isn't that the end of it? No, I think there are two separate points there. The first one is, we made an undisputed factual showing below that if we did submit to that condition, there would be an undue burden. Well, that is not this case. We don't decide hypothetical cases up here. We decide actual cases and controversies, and that is our jurisdiction. And if there is another case out there that might create an undue burden if you were to do something else, that might come along later, but that is not what we are deciding here. Judge Griffin, I think it is no different from a pre-enforcement challenge. If the state hadn't yet implemented a statute and we were coming in and trying to claim that there would be an undue burden if the statute came into effect, we would be making the same showing. We showed below that if this condition were accepted, and I will get to that in a second because I agree that it does distinguish this case. If we accepted that condition, just like in a pre-enforcement challenge, if the condition became effective, there would be an undue burden on women in Ohio. There is no case that requires a party to submit to an unconstitutional condition in order to challenge it. And to get back to the Memorial Hospital example, that was a case where the right belonged to the patient, but Memorial Hospital came in and sued and said, we have an Article III injury here because we are being denied a subsidy as a result of treating a patient. They never said that they would stop treating the patient, and in fact the patient had no cognizable injury in that case because the patient got treated, notwithstanding that he didn't satisfy the durational residency requirement. The unconstitutional conditions doctrine, it's Memorial Hospital versus Maricopa County. The Supreme Court. Justice Alito talks about this at length in Arizona, and in fact in footnote 19 of Harris v. McCrae, the court goes on at length about Memorial Hospital because it says in that footnote, this could be an unconstitutional conditions case if the state tried to exclude women who obtained abortion from nonabortion-related public benefit services. And that's precisely the issue here. Just to be clear, just to make sure I'm communicating or you're communicating, I thought the other side was saying there is no unconstitutional conditions case where you didn't have the person with the constitutional right. I disagree. And you're telling me this is the example that counters that? It's not a great example, but it is an example that counters it. You're letting me down. Sorry, I apologize. I was looking forward to reading the case. I'm about to say no. You should certainly read it. There is a patient in that case suing alongside Memorial Hospital. What's the best case that defeats their central point? I think Memorial Hospital and I think Craig v. Boren. The barkeeper goes into court in Craig v. Boren and says, my license is on the line here. I have no right to equal protection in the provision of 3.2% beer. My license is on the line if I violate the equal protection rights of the bar patrons. And the court says, of course. We have held from time immemorial that third parties can come into court and be proponents of the rights of other parties if it's necessary to protect the transaction, to protect those third parties' access to the markets and services that are at issue. So the barkeeper comes into Craig. They say that the individual bar patron is out of the case because they had aged out. The bar patron comes in and says, I want to sue to vindicate the rights of my patrons to be free from unlawful discrimination because men can drink 3.2% beer and women cannot. And the court... This is just saying the barkeeper has third-party standing. It's not saying on the substantive merits question that imposition of the condition upon a party that itself does not hold the right is a violation of the doctrine. I don't think any court has specifically held that. But I think what Craig and Memorial Hospital show is there is no hurdle to a third party who is recognized to be a conduit for the vindication of the underlying rights of the rights holder to come into court and say, you may not impose a condition on me. You may not put the screws to the... And by the way, it's not going to change my behavior either way. Maybe that third party loses. So that I disagree with. And I think Memorial Hospital is a good example of that. The hospital went ahead and provided the services notwithstanding the fact that they couldn't get reimbursed by the state. I think there's another important point to make here, though. The Supreme Court has been entirely clear that unconstitutional conditions doctrines cases are brought by the stalwart. They are brought by people who will not submit to the condition. So in Branty v. Finkel, the court explained that it wouldn't require assistant public defenders to change their political affiliation in order to bring their unconstitutional conditions claim. And in Kuntz, the Supreme Court took on this precise error. Justice Alito says in his opinion, the Florida Supreme Court was puzzled that there could be any claim of unconstitutional action when there was no taking in that case. And what he says is that mistakes the purpose of the unconstitutional conditions doctrine. The point of the unconstitutional conditions doctrine... So in Hellerstedt, it comes out differently if the new licensing law works this way. You can continue to provide abortions in this state if and only if you submit to this new regulation. The way I'm hearing you talk about unconstitutional conditions is the stalwart gets to say, I'm not submitting and I want a challenge now. So Hellerstedt, it may have led to the same outcome but they would have had to decide that case without finding out how many hospitals and clinics stopped providing abortions, if I'm understanding you correctly. I don't think the party claiming the unconstitutional condition is ever relieved of the burden of showing that the underlying substantive right would be violated if they accepted the condition. In this context, you show on the ground. Absolutely, and we've made that showing. The showing doesn't need to be a retrospective showing that in fact there has been an undue burden on access to abortion. If that were the case, no pre-enforcement challenge to any abortion regulation could succeed. What we have shown with expert testimony, with factual testimony and it is uncontested by the state. That's why there's no hypothesizing necessary in this case. This isn't speculating about what might happen. If Planned Parenthood accepts this condition there will be an undue burden on women in Ohio under Hellerstedt. This is not a case at the margins. This is not a case where the court has to engage in some kind of guesswork. That is the showing we made below. The state never contested it. So the only question, and what I heard Mr. Mupan say is really the only question is, does this case turn on the concession? It cannot be the case that the constitutionality of this statute depends on Planned Parenthood's willingness to resist it. There is no principle in the constitutional order that depends on the targeted person's willingness to resist. It also can't be the case... I disagree, Judge Sutton, and for this reason. Planned Parenthood clearly has Article 3 standing here to come into court. It's subject to $1.4 million in withdrawn funding. The Supreme Court has repeatedly said that Planned Parenthood can come into court and it can be a proponent of the rights of its patients. For the same reason, the Unconstitutional Conditions Doctrine is sufficiently broad to accommodate scenarios that the court has recognized. The mine run of abortion cases present regulations where the regulation is imposed on the abortion provider and the effect is on the woman. The woman is the one who holds the right to access an abortion free from an undue burden. Yet in all of those cases, even though the regulation is imposed on the woman, the provider is able to come in and say, if I submit, if I resist this with criminal sanctions, whatever the case may be depending on the regulation, there is no reason for the Unconstitutional Conditions Doctrine to operate any differently. The point is that there are certain conditions that are off-limits for the government to impose. One of them is to leverage constitutionally protected conduct. Constitutionally protected conduct. That's the language the court very often uses in these cases. You may not leverage constitutionally protected conduct as a condition of participating in a government funding program. What that means is that where your constitutionally protected conduct depends on a third party to vindicate it, a regulation imposed on the party that is necessary to vindicate it operates as a restriction on you and where the burden is undue, and where you've made the showing that it's undue, you can vindicate that right under the Unconstitutional Conditions Doctrine. But it's the burden on the third party, right? Absolutely. The issue in this case is could the government accomplish directly, I think you made this point earlier, could the government accomplish directly what it's trying to do indirectly? What the government cannot do directly is force Planned Parenthood to stop providing abortions in the state of Ohio, and that is because doing so would create an undue burden for women in Ohio who seek to terminate their pregnancy through abortion. So the question is can they do it indirectly by leveraging funding for non-abortion related programs? And the answer is very clearly no. The state and the federal government seem to take the position that because Planned Parenthood has said they will not submit to the condition, there's nothing directly that would be done here. They can't put Planned Parenthood out of the practice of providing abortions. No, they're saying there's no undue burden. As I understand it, the only dispute between the parties is whether the undue burden is dissipated in this case simply because Planned Parenthood has refused to date to submit to it. The government never disputed below. We've now been litigating this case for over two and a half years in the district court and before the panel. The government has never so much as suggested that if Planned Parenthood were to submit, there would not be an undue burden. We made an undisputed showing below that no abortion clinics in Cincinnati, the largest metropolitan area in the United States, and one abortion provider in Columbus. Women would be traveling distances comparable to those in Hellerstedt in order to obtain an abortion. It's not this case. I understand the point, but I think the point is this. The reason it's not this case, the only reason it's not this case, is because Planned Parenthood refuses to submit. And I think there is a long constitutional tradition of not requiring parties that claim an unconstitutional condition not to submit, not to give up their constitutional rights. When they have their constitutional rights. I completely understand. I think that in order for us to win on the conduct provision. I understand the irony that you're complaining about. Yeah. So I agree with you that in order for us to win, the fact that we will not resist needs to be part of the analysis. And the fact that we're asserting the rights of a woman needs to be part of the analysis. The Eighth and Ninth Circuits have in fact held, however, that Planned Parenthood has its own freestanding right to provide abortion. That's not an argument that I'm pushing before the court right now, but that is an alternative holding. I grant you both of those things, Judge Kethledge, but let me try to put it a different way. What Justice Alito says in Kuntz is, the greater power in that case to deny a permit altogether does not imply a lesser power to condition the availability of a government benefit on forfeiture of a constitutionally protected right. Some of these things sound Cartesian. I'm not trying to be flippant, you know. Ultimately the question is, I think that we're charged to focus on, is whether on the ground the woman's right is impaired. And on this record, I don't see how it is. In that respect, I think that the right way to look at this is as follows. The Unconstitutional Conditions Doctrine puts certain rights off limits as conditions of government funding programs. The government has chose to leverage the right to obtain an abortion as a condition of a government funded program. If accepted, there would be an undue burden on that right. That's clear as day from the record. So the question is, can the government rely on the fortitude of Planned Parenthood to render this statute unconstitutional? I'm not aware of any other principle in constitutional law that would depend on the forbearance of the targeted party to render the statute constitutional or unconstitutional. And let's say that a year and a half from now, Planned Parenthood actually accepts the condition and stops providing Planned Parenthood. We are in exactly the same place arguing the exact same case, making the same exact factual showing with all of our expert declarations and all of our fact declarations. It can't be the case that the statute is unconstitutional a year and a half from now because the rights of women in Ohio have been demonstrated retrospectively to have been unduly burdened. But it's constitutional right now simply because we're looking prospectively on an undisputed factual showing as to what would happen if we did exactly what we say we did. There's no principle of constitutional law that requires the court to look beyond the undisputed factual showing. It depends if this is a record-based determination. If it is, facts can change and outcomes change as a result. If it's just a more abstract legal determination, then you're right. I see the point. I'm not trying to dominate this. No, no, no. These are all good questions and certainly ones that I've been thinking about. There is a record-based showing here. There are factual findings. The district court actually didn't make a finding on the undue burden question. There are undisputed factual showings below, expert testimony, fact testimony, that if the condition were accepted, there would be an undue burden. I think what this case boils down to is whether the court accepts Ohio's submission that it can turn the screws to Planned Parenthood so long as Planned Parenthood is strong enough to oppose. That's simply not the way the unconstitutional conditions doctrine was ever envisioned. The offense in an unconstitutional condition is being put to the choice of forfeiting a constitutionally protected interest. I grant your point that, in your view at least, it looks like there needs to be an identity between the party on whom the condition is placed and the rights holder. I don't think the unconstitutional conditions doctrine is so constrained. I think Memorial Hospital is a good example of that, and even setting Memorial Hospital aside, the doctrine represents a fundamental insight that rights cannot be diluted by the government by using them as a chit in negotiating over who is going to participate in government programs. In some of these other unconstitutional conditions cases, you have a response of separating the corporate form and de-affiliating. I take it that's just not realistic here. It's not realistic because the statute prohibits affiliation. No, my point is de-affiliating. That's the point I'm making. That's what has happened in some of these cases. League of Women Voters and Reagan allow some kind of affiliation. The problem here is that affiliation is defined so broadly in this statute that Planned Parenthood would essentially have to cease being Planned Parenthood at all. I'm assuming, for the sake of argument, you're right on the free speech point. If you're right on the free speech point, you would still say the same view, that that's not really realistic here. I don't think it saves the constitutionality of the statute in a way that you could... I don't meant save it. I'm just trying to figure out, are we affiliating the C4 or affiliating the editorializing entity and the non-editorializing entity? Given the way that this state statute is written... Even if you're right about the support clause in free speech grounds? Yeah. The clause that we're challenging on the First Amendment grounds relates to the promotion of abortion. There's a separate clause in the statute that says that you may not affiliate with any entity that provides or promotes abortions. You wouldn't be talking about two affiliates anymore. You wouldn't be talking about a C3 and a C4 of the same entity. You'd be talking about entities that essentially need to have nothing to do with each other in order to satisfy the state statute's definition of affiliate. I see my time is up. Thank you, Your Honor. Your Honor, I'd like to briefly address some of the extreme hypotheticals of the, if we outlawed everyone performing abortion, things both in the legal sense and propose a hypothetical and also the alleged not contesting below. As to the extreme end of could we say no one who's a doctor can do anything else, there's both a legal and a factual hypothetical. Legally, yes, that's basically Williamson-Lee optical that you can't be an optician and an optometrist. Whether we want to say you have to do both, you have to do both separately, we could do that. And in fact, as a hypothetical, we could go so far if we wanted to, if we really believed in socialized abortion, if the state established state-run abortion centers and then we said we're going to abolish all private sector abortions, I think we could in an undue burden test because if all the women had places to go all over, and that's a problem with their hypothetical, that even in, I mean in their test, is that if there were clinics on every corner, you don't reach that test, you don't reach the Hellerstedt analysis, Baird would come out the other way for them if it were we don't even reach undue burden. But because of their concession below that we don't reach undue burden, I dispute as best I can the notion that we didn't contest that. I admit counsel has me at a disadvantage because I'm not sure what the citation was for the idea that we ever agreed with that. The best I could find is that we said that their proffered evidence about an alleged burden is irrelevant, and we said that that's not raised because of that. But we never said you would reach that point, and having litigated Baird and several other cases, I'm pretty sure we not only do dispute that, but we'd come out on the better side of it because it's a two-way street on 75 if closing Dayton doesn't impact Cincinnati, then closing Cincinnati doesn't impact going to Dayton. We could litigate all that out, except they cut that off at the pass by saying that's never going to happen. And their counterfactual test would truly allow, informed consent would come out the other way if it were a funding condition because you don't need to show the effect on women, and that's not true. You do need to show an effect upon women, and here they don't, so they don't have a claim under undue burden. As for Memorial Hospital, I acknowledge I'm at a disadvantage because it wasn't cited in any of the briefs below, so I don't have it in my case notebook. The only citation to it is one sentence with a parenthetical in Kuntz with no discussion of this point, but I will say that Rumsfeld comes after that, and Rumsfeld makes clear that if the state could do it directly, then of course you could do the lesser, the greater lesser thing. Rumsfeld says that so plainly, that if we could do this as a direct regulation, and I believe we could, but we don't know, because the direct regulation here that's relevant wouldn't be abolishing all abortion, we know we can't do that, but the direct regulation would be somehow some sort of provider regulation that only took out these three clinics. And whether we could or could not do that would depend upon a Baird-Hellerstedt type of analysis, exactly what we've never gotten to. And because they've never even proffered that, the idea that someone alleged it, the court never relied on it, so it's not an alternate ground for reliance, there's no finding. You're saying that the direct regulation proposition is what? Well, because they're saying this condition is being put to them. This condition is not being put to all the abortion clinics in the state that have never applied to these programs and never have any interest in applying to these programs. So if you did have to ask, stacking the hypothetical upon hypothetical against their concession, you want to ask, what if we outlawed abortion? You would say, what if we somehow said, instead of a funding condition, we did it retrospective. Anyone who's gotten STD testing funds in the last five years, you can't perform abortions next year. Well, that would put out of business these three clinics, and we don't know what would happen on the ground. Would someone else enter the market? Would the court consider Cincinnati to date and now somehow unconstitutional and comparable to the drive across West Texas? I don't think you would, because Baird's still good law. I don't think, but we don't know, because they said two things. First, they said, we don't even have to meet that test. And again, I don't think, I'm not sure, but I don't think they refuted the idea that if their test is right, if we don't even need to get there, just because it's a condition that would reverse the result in Casey itself, if it were done as a condition to try to buy informed consent, they would win. The case of Baird, they would win, because it shuts out a provider, and we don't even look at the fact on the ground outcome. In fact, or again, if there were clinics on every corner, they say they don't have to go to any of that. And that's what makes their test is that, again, there are two types of, there's direct regulation on abortion. You must get informed consent before you proceed. Then there are two forms of indirect, where we sort of indirectly regulate the provider, but we do it directly, of providers you must have admitting privileges, you must have this or that, and even then you apply undue burden. But, or you could do an indirect by a funding thing like Harris, where we win. But if you come all the way to the extreme, where you stack indirect upon indirect, where you say it's only a funding condition upon the provider, then all of a sudden they don't have to meet any showing. They can just say the condition itself means we win. But they're not. They're not saying that. They're saying look at what would happen if the condition was accepted. So I don't really get your example of a provider on every corner, because the answer would be, so what? Well, that's exactly what's important. If there's a provider on every corner and one provider is taken out and there are 99 other options, they say they still win that case. And then they say on top of that, oh, we could show if we went there. No, that's not what they say. They say they win because it was uncontested below that there would be an undue burden. Well, first, Your Honor, I respectfully disagree that it's uncontested. We have only their statement that they say someone testified about it. You don't have any findings on that regard from the district court to rely on. And you don't have anything where we say we concede that. We say because you're not going there, it's irrelevant whether you would or not. But I think as a matter of case law, this court has already said Dayton and Cincinnati is not an undue burden. So their reliance of their saying, well, people in Cincinnati would have to go to Dayton, I don't think one allegation in one deposition that a court never relied on overcomes the holding of this court in Baird. I don't think that gets them there. But again, even if they do that, that's admitting you actually have to get into undue burden land. They're saying we don't even reach undue burden and that simply an assertion will do. But every undue burden case out there, you have this intense factual analysis. And they say, well, because it's a condition, we win. And that gives them, again, an easier challenge because under their theory, Baird comes out the other way. Hellerstedt would still come out that way, but you wouldn't have to do the geography of Texas. It would be an automatic. And that can't be right because the ultimate question, Your Honor, is the classic, whose right is it anyway? And again, women's rights are not affected in the least. And on the other hand, they have no rights to protect. And those are in two separate silos and they may not like how they come together. But there's nothing in the Constitution that requires Ohio to fund abortion providers against our message of preferring childbirth over abortion. So we ask that you reverse. Okay. Thank you, counsel.